**In re Joseph George LOMBARDO, Debtor.**

**Rochelle A. RAND, Plaintiff,**

**v.**

**Joseph George LOMBARDO, Defendant.**

**Bankruptcy No. 98–02256–B7.
Adversary No. 98–90134.**

United States Bankruptcy Court,
S.D. California.

Sept. 24, 1998.

---

Rochelle A. Rand, Fifth Avenue Financial Centre, San Diego, CA, for Plaintiff.

Joseph G. Lombardo, San Diego, CA, pro se.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding the Court entered an Order on June 30, 1998, granting Plaintiff's motion for . summary judgment based in part upon the Court's mistaken understanding that no opposition had been filed by the Defendant/Debtor Joseph George Lombardo ("Lombardo") within the time limits set forth by the local rules. In fact, Lombardo filed an opposition on June 12, 1998, and a copy was received by this Court on August 10, 1998 [1]. Therefore, the Court's Order of June 30, 1998, must be vacated and Plaintiff's motion for summary judgment decided after consideration of the Debtor's opposition. Plaintiff's motion is granted for the reasons set forth below.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding to determine to determine dischargeability of a particular debt under 28 U.S.C. § 157(b)(2)(I). This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

### FACTS

Plaintiff Rochelle A. Rand (hereinafter "Rand") represented Yvette M. Gatewood ("Gatewood") in a complaint to establish Lombardo's paternity of a minor child, Victoria N. Lombardo ("Victoria"), in the Superior Court of California, County of San Diego, Case Number D 372685 (the "paternity case"). On December 20, 1993, in the paternity case the superior court entered findings and an order by default, attached as Exhibit A to the complaint and admitted by Lombardo's answer in paragraph 1, establishing Lombardo's paternity of Victoria, awarding Gatewood custody of Victoria and awarding child support in the amount of $457 per month, and further ordering $2,000 in attorney's fees payable to Rand which the superior court describes as "payable as child support". The superior court specifically wrote: "As and for further child support, [Lombardo] shall pay to Plaintiff's attorney [Rand] the sum of $2,000, payable at $100 per month, commencing January 15, 1994, by Wage Assignment, and on the fifteenth day of each month thereafter until paid in full. If any two payments are missed, the total sum is due and payable." The superior court's order sets forth findings used in determining the amount of child support, including findings that Gatewood had no income while Lombardo had a gross monthly income of $3,000 and net disposable income of $1,833. The record does not show that Lombardo appealed or otherwise sought relief from the superior court's findings and order in the paternity case.

Lombardo filed a voluntary Chapter 7 bankruptcy petition on February 17, 1998. Rand filed this adversary complaint on March 11, 1998, seeking to except the $2,000 attorney fee award from Lombardo's discharge as in the nature of support under 11 U.S.C. § 523(a)(5), which excepts from discharge obligations to a "spouse, former spouse, or child of the debtor" for "support of such spouse or child in connection with a separation agreement or divorce decree or other order of a court of record . . . ." Rand filed a motion for summary judgment on May 27, 1998. Lombardo filed a response in opposition on June 12, 1998, but failed to serve this Court with a copy. The Court entered its Order on June 30, 1998, granting Rand's motion for summary judgment. However,

---

1. The parties were directed to mail copies of all pleadings directly to the Court's chambers by

Order filed April 20, 1998.

that Order was entered without consideration of Lombardo's opposition, which the Court received August 10, 1998. The Court now decides the matter after consideration of Lombardo's opposition.

## CONTENTIONS OF THE PARTIES

Rand contends that there are no genuine issues of material fact and that she is entitled to summary judgment as a matter of law under § 523(a)(5) based upon the findings and order entered in the paternity case, which characterized the $2,000 award of attorney's fees payable to Rand as "child support".

Lombardo contends that Plaintiff obtained the default judgment in the paternity case by means of extrinsic fraud and took advantage of his *pro se* status to obtain the default judgment; that perjury took place in the paternity case regarding Gatewood's income and expenses and receipt of welfare; that his paternity of Victoria was not established in the paternity case; that Plaintiff's motion lists the amount owed as $4,500 rather than $2,000 and should therefore be denied as contradictory and inconsistent; that Lombardo is unable to pay the debt and that the benefit of discharging the debt outweighs the resulting detriment to Rand, Gatewood or his child Victoria; and that credibility is at issue and he wishes to cross-examine Rand and Gatewood at trial.

## DISCUSSION

### I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is governed by F.R.B.P. 7056. Rule 7056, incorporating Rule 56(c), Fed.R.Civ.P., states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *In re Younie,*

211 B.R. 367, 373 (9th Cir. BAP 1997) (*quoting In re Aquaslide 'N' Dive Corp.,* 85 B.R. 545, 547 (9th Cir. BAP 1987)). Once that burden has been met, "the opponent must affirmatively show that a material issue of fact remains in dispute." *Frederick S. Wyle Professional Corp. v. Texaco, Inc.,* 764 F.2d 604, 608 (9th Cir.1985). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible in evidence. *Aquaslide,* 85 B.R. at 547. Lombardo did not submit affidavits with his opposition, but did attach correspondence from Rand and court documents.

The moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n.,* 809 F.2d 626, 630 (9th Cir.1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Electrical Service,* 809 F.2d at 630 (citing *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.*

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *Matsushita Electrical Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Electrical Service*, 809 F.2d at 631.

Rand's motion for summary judgment is supported by the findings and order of the superior court in the paternity case, including the provision ordering Lombardo to pay her $2,000 as child support. Rand argues the findings and order entered in the paternity case should be granted collateral estoppel effect and preclude a finding that there remain genuine issues of material fact.

## II. COLLATERAL ESTOPPEL

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") construed the requisites for collateral estoppel in *Younie*, 211 B.R. at 375:

Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); [*In re Nourbakhsh*, 67 F.3d 798, 800 (9th Cir. 1995) ] (*citing Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985) and 28 U.S.C. § 1738, the Full Faith and Credit statute). Collateral estoppel applies in dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284–85 & n. 11, 111 S.Ct. 654, 658 & n. 11, 112 L.Ed.2d 755 (1991); *In re Bugna*, 33 F.3d 1054, 1056 (9th Cir.1994).

Under California law, the application of collateral estoppel requires that:

(1) The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding;

(2) The issue must have been actually litigated in the former proceeding;

(3) It must have been necessarily decided in the former proceeding;

(4) The decision in the former proceeding must be final and on the merits; and,

(5) The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *In re Kelly*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996).

Lombardo does not address the elements of collateral estoppel listed above. Instead, Lombardo's statement in opposition states the following reasons, which are set forth in full, why summary judgment should not be granted:

1). Defendant believes that the debt in dispute is *not* in the nature of child support but on the contrary, in the nature of extrinsic fraud, deceit and overreaching by the plaintiff/Attorney's [Rand] own acts in obtaining the judgment for her fees in the State Court action.

In the state court action for which above listed debt is in dispute, Plaintiff/Attorney filed an OSC on behave [sic] of her client YVETTE M. GATEWOOD to establish paternity. Plaintiff/Attorney, from before the commencement of the state court action up to the actual hearing date convinced the Defendant that there would be no need for a hearing due to the fact that Defendant was being "cooperative" in the matter (i.e., supplying her with paystubs, and paying child support voluntarily on a monthly basis etc.). (See Defendant's exhibit # 1). Once the matter was set for hearing however, Plaintiff goes on to assure defendant that the matter would be taken off calendar (that she would personally take it off), that there wasn't a need for Defendant to make an appearance at the OSC hearing because she would "handle everything" and that the filing of the OSC was again, only procedural. Plaintiff/Attorney who was aware that Defendant in the state court action was not represented by his own counsel, never advised Defendant that the two parties involved in the action (her client

Ms. Gatewood and Defendant Mr. Lombardo) interests were adverse, that Plaintiff/Attorney represents the interests of her client Ms. Gatewood alone, or that the Defendant (Mr. Lombardo) should seek independent legal advice.

Defendant was therefore, fraudulently prevented from fully participating in the proceeding by being kept in ignorance. Furthermore, perjury occurred in the Income and Expense Declaration in the state court action on the Plaintiff's client's behalf: [sic]

2). The Plaintiff's client claimed on the income and expense declaration that her income at the time was $0 and that she was not receiving, nor had ever applied for AFDC.

Had there not been perjury committed on the income and expense declaration by the Plaintiff the Defendant would have had an opportunity to present to the court his own Income and Expense declaration which would have represented the true incomes of both parties.

Most importantly, based on advice from the Plaintiff/Attorney to the Defendant (not to make an appearance in court) the Defendant was not afforded the opportunity to make an appearance at the state court action against him to defend himself. It is therefore believed that the Plaintiff, being a licensed attorney, kept the Defendant in ignorance, in order that the Plaintiff could obtain a default judgment in her favor which she did including an award of attorney fees. d).

In addition, during the state court action, Plaintiff was advised by the District Attorney that there may have been an open AFDC case involving the Plaintiff's client and child in the state court action and was advised to contact the District Attorney's office regarding the matter. (See Defendant' s exhibit # 2). Plaintiff being aware that there was a Welfare case already in progress involving her client, continued to proceed with her OSC action in the state court, knowing or should have known that her client (Ms. Gatewood) was possibly committing fraud (i.e., collecting welfare benefits while simultaneously receiving child support from Defendant and gainfully employed). (See Defendant's exhibit # 3). This further confirms the Defendant's position that Plaintiff, being a licensed attorney, mislead [sic] the Defendant, and used his ignorance as her own strategy to obtain a default judgement which was self-serving and for the Plaintiff's benefit only and not for the benefit of the child.

Furthermore, Plaintiff failed (in the state court action) to legally establish paternity (i.e., tissue and blood testing, stipulation, etc). Paternity was not legally, established until some three years later by the District Attorney by way of Stipulated Judgment (See Defendant's exhibit # 4) and after bringing a Welfare Fraud action against the Plaintiff's client Ms. Gatewood (pertaning [sic] to the same state court OSC filed by the Plaintiff). Subsequently, the District Attorney filed stipulation for entry of Judgment and Judgment and has ordered all payments made by the defendant for the benefit of the child payable directly to the Office of the District Attorney. (See Defendant's exhibit # 4).

The Plaintiff's alleged debt therefore, is not for the benefit of the child, or in the true nature of child support, nor is it in arrears to the Plaintiff as alleged in the Plaintiff's complaint. Any debts incurred in the above-listed state Court action by the Plaintiff's client should be paid solely by the Plaintiff's client (Ms. Yvette Gatewood).

3). Plaintiff has garnished Defendant's wages for alleged debt and has therefore taken the position of judgment creditor by way of recording a judicial lien against Defendant. Defendant has moved the court to avoid such lien. (See Defendant's exhibit # 5).

4). Plaintiff stated in her original Complaint to Determine Nondischargeability of Debt that the amount owed from the Defendant is $2,000. However, in the Plaintiff's Motion for Summary Judgment, Plaintiff lists the amount owed her as $4,500. The complaint is uncertain in that it contains contradictory and inconsistent allegations which make it impossible to

ascertain the amount allegedly due the Plaintiff.

6). The Defendant/Debtor is unable to pay the debt from income or property not reasonably necessary to support the debtor or his dependents.

Discharge of this debt would result in a benefit to the Defendant/Debtor that outweighs the resulting detriment to the Plaintiff or the Plaintiff's client or child.

7). Credibility is also at issue in this instant matter and Defendant would like to exercise his rights to be heard at trial on this action to be able to have the opportunity to cross-examine the plaintiff and the Plaintiff's client/witness.

Turning to the elements of collateral estoppel, the issue of child support for which Rand seeks exception from Lombardo's discharge is identical to the $2,000 award of attorney fees to Rand "payable as child support" in the paternity case. Lombardo argues that Rand's motion lists the amount owed her as $4,500. It does not. Rand's and Gatewood's declarations in support of Rand's motion each state that Gatewood owes Rand in excess of $4,500 for attorney's fees, and that the $2,000 would be credited against that amount, but Rand's motion nowhere states or requests exception from discharge of $4,500. The $2,000 child support payable to Rand for which she seeks exception from Lombardo's discharge as child support is identical to that decided and awarded in the paternity case. There is no contradiction or inconsistency which makes it impossible to ascertain the amount due Rand, as Lombardo contends.

■ Next, the issue of child support was actually litigated in the paternity case. Lombardo's statements above demonstrate he was aware and had notice of the OSC hearing, but failed to attend[2] and the superior court entered its findings and order by default after hearing testimony. A default judgment satisfies the "actually litigated" requirement for the application of collateral estoppel in California, and thus in this case.

*Younie,* 211 B.R. at 375; *In re Lake,* 202 B.R. 751, 757 & n. 6 (9th Cir. BAP 1996).

Third, the issue of child support was necessarily decided in the paternity case. The superior court's findings and order are on standard court forms and include specific findings of the parties' income and expenses relative to the determination and award of child support, including the $2,000 attorney fees payable as child support to Rand. Such findings and order necessarily included a determination of all of the facts required for an award of child support under California law. *See, e.g., Younie,* 211 B.R. at 374. Lombardo argues that the Plaintiff failed to legally establish paternity[3] in the paternity case. However, the superior court's order specifically states: "Oral testimony was taken and the Court held that there was sufficient facts to establish a prima facie case of paternity."

■ Fourth, the superior court's decision is final and on the merits of whether the $2,000 attorney fee award to Rand was in the nature of child support. The superior court made specific findings characterizing the $2,000 attorney fees payable to Rand as child support. Lombardo did not appeal. The decision is final. Fifth and last, Lombardo, the party against whom preclusion is sought, is the same party-defendant as in the paternity case. All elements for application of collateral estoppel under *Younie* are present.

■ Notwithstanding, Lombardo's opposition attacks the validity of the superior court findings and order, as set forth fully above. Lombardo's contends that he was duped by Rand into not attending the hearing at which the superior court made its determinations of child support by default, and that Rand and her client Gatewood committed perjury. However, the Court will not consider Lombardo's attacks because the Court is bound by 28 U.S.C. § 1738 to give full faith and credit to state court judgments. *In re Chang,* 210 B.R. 578, 580–81 (9th Cir. BAP 1997). The superior court findings and order are final. Lombardo did not appeal it or attack the superior court's jurisdiction to en-

---

**2.** Lombardo's allegations of extrinsic fraud which caused him to not attend are addressed below.

**3.** Lombardo admits, however, that paternity was "legally established" three years later.

ter the findings and order.[4] Therefore, the Court is bound by 28 U.S.C. § 1738 to give the superior court's findings and order full faith and credit. *Chang*, 210 B.R. at 581.

## III. EXTRINSIC FRAUD

■ Lombardo cites *Lake*, 202 B.R. at 758–59 for the proposition that the bankruptcy court may entertain an attack on a state court judgment in the context of a dischargeability proceeding because Rand obtained the judgment through extrinsic fraud. Extrinsic fraud is an exception to the application of the full faith and credit doctrine. As the BAP explains in *Younie:*

> Extrinsic fraud entails preventing a party from presenting all his case to the court, as opposed to defrauding the party with respect to the substantive rights being adjudicated at a proceeding .... [citation omitted] Classic examples of extrinsic fraud include keeping a party in ignorance of a lawsuit or inducing him not to appear, or concealing a claim or defense. *Lake*, 202 B.R. at 758, citing 8 E.B. Witkin, California Civil Procedure §§ 204–10, 215A (3d e.1988 & Supp.1996). To warrant relief on the basis of extrinsic fraud, the moving party must establish: (1) facts constituting extrinsic fraud; (2) a substantial defense on the merits; and (3) diligence in seeking relief from the adverse judgment. *In re Marriage of Dàmico*, 7 Cal.4th 673, 29 Cal.Rptr.2d 787, 872 P.2d 126, 135 (1994). In addition, a party seeking relief from a default judgment must also present a satisfactory excuse for not defending in the original action. *Lake*, 202 B.R. at 759 (citing *Stiles v. Wallis*, 147 Cal.App.3d 1143, 195 Cal.Rptr. 377, 378 (1983)).

211 B.R. at 375–76.

■ Lombardo has not established the above elements for extrinsic fraud. With respect to the second, Lombardo completely failed to establish a substantial defense on the merits of the paternity suit. Lombardo's opposition and his own exhibits clearly establish his paternity of Victoria, regardless of when paternity was "legally established".

He has no substantial defense on the merits of the paternity case.

Lombardo failed to establish the required diligence in seeking relief from the adverse findings and order in state court. *See Younie*, 211 B.R. at 376. The record does not show that he appealed the superior court's findings and order or otherwise appeared in superior court to attempt to set aside the findings and order. Thus, even if all of Lombardo's averments about Rand's taking advantage of his *pro se* status are true, he has not shown the required diligence. *Id.* The findings and order were entered December 20, 1993. Lombardo did not seek relief from the findings and order in the almost five years since. .

Because Lombardo failed to establish a substantial defense on the merits of the paternity action, or diligence in seeking relief from the superior court's findings and order, he has failed to make the requisite showing to warrant relief on the basis of extrinsic fraud. *Younie*, 211 B.R. at 375–76.

■ Lombardo contends Rand defrauded him by convincing him that there would be no need for a hearing because he was cooperating, that the filing of the OSC was only procedural, and that there was no need for him to attend the hearing on the OSC because she would take the matter off calendar. Lombardo complains that Rand "fraudulently prevented" him from participating in the OSC hearing, where Rand and Gatewood allegedly committed perjury. Even if true, such allegations would only satisfy the first element for extrinsic fraud under *Younie*. Attached to Lombardo's opposition is Rand's letter to Lombardo dated October 28, 1993, in which Rand acknowledges Lombardo's cooperation in admitting paternity and voluntarily paying child support. However, Rand's letter clearly informs Lombardo that if he does not schedule an appointment with her within seven days that she was authorized by Gatewood to set a hearing date. In fact, a hearing date was set. Lombardo's opposition admits he knew of the OSC hearing, but he failed to attend. While inducing a party not to appear is a classic example of

---

4. The state superior court has concurrent jurisdiction to determine dischargeability of debt un-

der § 523(a)(5). *In re Aldrich*, 34 B.R. 776, 780 (9th Cir. BAP 1983).

extrinsic fraud, *Younie*, 211 B.R. at 375, Lombardo's allegations do not satisfy all of the elements for relief on the basis of extrinsic fraud.

■ Therefore, the findings and order relative to Rand's $2,000 award payable as child support are final and under the doctrine of collateral estoppel and full faith and credit. *Younie*, 211 B.R. at 373–75; *Chang*, 210 B.R. at 581. Lombardo has failed to establish that there are any genuine issues of material fact precluding summary judgment. The allegations of Lombardo's opposition are not material, i.e., "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit". *T.W. Electrical Service*, 809 F.2d at 630. As stated above, disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Electrical Service*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505). What remains to be determined is whether Rand is entitled to summary judgment as a matter of law under § 523(a)(5).

### IV. SECTION 523(a)(5)

■ A determination of what constitutes alimony, maintenance, or support is determined under federal bankruptcy law, not state law. *Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982); H.R.Rep. No. 595, 95th Cong., 2nd Sess. 77–79 (1978). Section 523(a)(5)(B) "departs from the general policy of absolution, or 'fresh start', that is embodied in the Federal Bankruptcy Act. It embodies an overriding public policy favoring the enforcement of familial obligations." *Shaver v. Shaver*, 736 F.2d 1314, 1315–16 (9th Cir. 1984). A debtor's interest in a "fresh start" is a matter of federal bankruptcy policy that Congress resolved in favor of debtor's spouses. *In re Harrell*, 754 F.2d 902, 906 (11th Cir.1985).

■ A bankruptcy court may presume that a finding is intended for support when the circumstances indicate that the spouse receiving the payments needs support. *Stout*, 691 F.2d at 861. Bankruptcy courts must look beyond the language of the decree to the intent of the parties and to the substance of the obligation. *Shaver*, 736 F.2d at

1316. The Eleventh Circuit Court of Appeals recognized that "[t]o the extent the obligation services the financial purpose behind alimony (or support or maintenance) it is nondischargeable. To the extent the debt is to divide property irrespective of financial need it is dischargeable." *Harrell*, 754 F.2d at 906. Section 523(a)(5) "should be read as using the term 'support' in a realistic manner; the term should not be read so narrowly as to exclude everything bearing on the welfare of the child but the bare paying of bills on the child's behalf." *Holtz v. Poe (In re Poe)*, 118 B.R. 809, 812 (Bankr.N.D.Okla. 1990); *Shannon v. Strickland*, 207 B.R. 752, 754 (M.D.Fla.1995).

Lombardo cites *In re Spencer*, 182 B.R. 263, 267 (Bankr.E.D.Cal.1995), and *In re Garcia*, 174 B.R. 529, 531–32 (Bankr. W.D.Mo.1994) for the proposition that an award of attorney's fees granted directly to an attorney rather than to the spouse or the child is a dischargeable debt because it does not fulfill the requirements of § 523(a)(5). There exists a split of authority among the circuits on this issue. *See, e.g., Spencer*, 182 B.R. at 266–67; *Garcia*, 174 B.R. at 531.

In the Ninth Circuit, certain BAP cases, at first glance, appear to support Debtor's contention that because the $2,000 award was payable to Rand it is dischargeable under § 523(a)(5). *See In re Crouch*, 199 B.R. 690, 692–93 (9th Cir. BAP 1996); *In re Chang*, 210 B.R. 578, 580–82 (9th Cir. BAP 1997). Upon closer reading, however, both *Chang* and *Crouch*, as well as *Spencer*, are distinguishable from the case at bar.

*Spencer* involved attorney's fees awarded to a county under a state statute providing for the cost of care and support of a debtor's minors while they were lodged in juvenile hall. 182 B.R. at 264. The bankruptcy court ordered the support debt discharged unless it is owed directly to a debtor's spouse, former spouse or child. *Id.* at 267. *Crouch* involved a similar debt owed to a county rather than to a spouse or dependent, for costs incurred while a debtor's dependent was housed in a juvenile hall, and which was held dischargeable under § 523(a)(5). 199 B.R. at 691.

*Chang* involved fees owed to court appointed professionals, including an attorney appointed by the state court to represent a child's interests in a custody dispute. 210 B.R. at 579. The BAP held that professional fees awarded by a court to court appointed professionals are dischargeable under § 523(a)(5) because they do not constitute payments to a spouse, former spouse, or child. 210 B.R. at 583.

■ The instant case is distinguishable from *Spencer, Crouch,* and *Chang* in that Rand was not counsel for a county and was not appointed by the court. Gatewood hired Rand to establish Lombardo's paternity of her child Victoria and to obtain an award of custody and child support. The superior court specifically characterized the $2,000 award of attorney fees payable to Rand as "child support". These facts were not present in *Spencer, Crouch,* or *Chang.*

More important, however, is the fact that Gatewood remains liable for Rand's attorney's fees, including the $2,000 awarded by the superior court. In *Chang,* the BAP construed its opinion in *Eisen v. Linn (In re Linn),* 38 B.R. 762, 763 (9th Cir. BAP 1984), and reiterated the principle that "dischargeability must be determined by the substance of the liability rather than its form". *Chang,* 210 B.R. at 582 (quoting *In re Spong,* 661 F.2d 6 (2nd Cir.1981)). Quoting *Linn,* the BAP in *Chang* noted:

> In [*Linn*], it was the debtor alone who was ordered to pay the attorney and the psychiatrist. **If these fees are not paid, the former wife and the child will not be liable.**
>
> Excluding these debts from discharge will not further the bankruptcy goal of a fresh start unburdened by the old debts. Nor will it protect spouses, former spouses and children from being injured by a debtor's discharge. [Emphasis added in *Chang*].

210 B.R. at 582.

The BAP further noted that excluding the attorney's fees "will not harm or hinder" the child "in any way". 210 B.R. at 583. Therein lies the critical distinction between the instant case and *Linn* and *Chang.* The superior court awarded the $2,000 as child support payable to Rand, doubtless recognizing that Rand's representation benefitted the child by fixing custody and child support. The superior court's findings and order are contemplated by § 523(a)(5) as an "other order of a court of record". Discharging the $2,000 child support would clearly harm Lombardo's child Victoria by increasing the financial pressure on the child's mother and custodial parent Gatewood[5]. There is no question that Gatewood remains liable for payment of Rand's attorney fee, including the $2,000 the superior court awarded as child support. Therefore, this Court accepts the superior court's finding and holds that the $2,000 award of attorney fees payable to Rand is in the nature of child support and nondischargeable under § 523(a)(5)(B), in part because of the harm that would befall Lombardo's child Victoria and her mother if the debt were discharged while Gatewood remains liable.

This holding is consistent with the BAP's holding in *In re Gionis,* 170 B.R. 675, 683 (9th Cir. BAP 1994), *aff'd,* 92 F.3d 1192 (9th Cir.1996), in excepting from discharge under § 523(a)(5) an award of $185,000 payable directly to a spouse's attorney in a dissolution proceeding:

> The presence of a minor child is an indication that the state court intended the award to be in the nature of alimony, maintenance, or support. *Shaver,* 736 F.2d at 1316, (citing *Woods,* 561 F.2d at 30). The dissolution proceeding focused on the custody and the welfare of the minor child who was in Wayne's custody when the award was made. The bankruptcy court took into account the presence of the minor child in its decision. Such evidence supported the conclusion that the award constituted spousal or child support.

The superior court proceeding in which Rand's award was entered was a paternity

---

5. Gatewood's opposition and exhibits show such hardship. Apparently Lombardo was delinquent in child support in the total amount of $7,500 notwithstanding the superior court's findings and order in the paternity case, forcing Gatewood to obtain welfare assistance for Lombardo's child Victoria.

action to establish Lombardo's parental relationship with Victoria and provide her with child support. Just like the dissolution proceeding in *Gionis,* the paternity action in the instant case focused on the welfare of the Debtor's minor child who was in the mother's custody when the direct award to the mother's attorney was made. 170 B.R. at 683. The superior court intended and specified that the $2,000 award to Rand was in the nature of child support.

Applying the above law to the undisputed facts, the Court holds that Rand is entitled to summary judgment as a matter of law with respect to the $2,000 attorney's fee award. The Family Court made specific findings characterizing the $2,000 attorney's fee award as "further child support", based upon the disparity of income and Gatewood's and the child's financial need. The $2,000 attorney's fee award is intended to serve the child's financial needs, and as serving the financial purpose behind support the $2,000 attorney's fee award is nondischargeable as in the nature of support under § 523(a)(5)(B).

## V. LOMBARDO'S REMAINING ARGUMENTS

Lombardo argues that summary judgment should not be granted because he has moved to avoid Rand's judicial lien in the main case. However, whether or not Rand's judicial lien is avoided has nothing to do with the dischargeability of the debt under § 523(a)(5). Even if he is successful in avoiding Rand's judicial lien, the debt would still be an allowed unsecured claim which may be excepted from discharge under § 523(a)(5).

Next Lombardo contends that discharge of Rand's debt would result in a benefit to him which outweighs the resulting detriment to Rand or to his child. Such an analysis applies in under § 523(a)(15)(B), but not to § 523(a)(5). This case does not involve § 523(a)(15)(B). The Court finds Lombardo's remaining arguments are without merit.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding to determine to determine dischargeability of a particular debts under 28 U.S.C. § 157(b)(2)(I).

3. Rand satisfied the requirements for application of collateral estoppel and full faith and credit to the findings and order entered in Case No. D 372685 in the Superior Court of California, County of San Diego.

4. Lombardo failed to make a satisfactory showing warranting relief on the basis of extrinsic fraud by failing to show a substantial defense on the merits of the paternity action and failing to show diligence in seeking relief from the superior court findings and order.

5. The $2,000 attorney's fee awarded against Lombardo by the superior court in the paternity case is excepted from the Defendant's discharge as in the nature of support under § 523(a)(5)(B).

IT IS ORDERED this Court's Order entered June 30, 1998, granting Plaintiff's motion for summary judgment is vacated.

IT IS FURTHER ORDERED Plaintiff's motion for summary judgment, filed May 27, 1998, is granted; and a separate Judgment shall be entered in favor of the Plaintiff and against the Defendant/Debtor Joseph George Lombardo providing that the attorney's fee support obligation awarded against Lombardo in the Family Law Division of the Superior Court of the State of California in and for the County of San Diego, Case Number D 372685, in the sum of $2,000 payable to Rand, is excepted from Lombardo's discharge as in the nature of child support pursuant to 11 U.S.C. § 523(a)(5).